D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

DONALD FELIX,

                Petitioner,

   -against-

ROBERT ERCOLE,

                Respondent.

------------------------------------------------------------------ X

09-CV-4003 (ARR)

NOT FOR PRINT OR ELECTRONIC PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Petitioner, a New York inmate serving a fifteen year sentence for attempted robbery, criminal possession of a weapon, menacing, and coercion, moves pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He contends that the prosecution violated due process by suppressing information favorable to the defense, see Brady v. Maryland, 373 U.S. 83 (1963), and the court violated due process and his rights under the Sixth Amendment Confrontation Clause by prematurely terminating his cross-examination of the prosecution's complaining witnesses and preventing him from calling a defense witness, see Davis v. Alaska, 415 U.S. 308, 315-16 (1974); Chambers v. Mississippi, 410 U.S. 284, 294 (1973) (quoting In re Oliver, 333 U.S. 257, 273 (1948)). Respondent argues that the petition should be dismissed. After careful consideration, I agree and therefore dismiss the petition.

I.    Background

In 2002, following a jury trial in New York Supreme Court, Nassau County, at which petitioner exercised his right to represent himself, petitioner was convicted of attempted robbery

1

in the first and second degrees, criminal possession of a weapon in the third degree, menacing in the second degree, and coercion in the first degree and sentenced to prison for fifteen years. The prosecution claimed that on November 2, 2000, petitioner and two accomplices entered adjoining stores connected by a doorway, Gemini Jewelry and Cindy's Variety, and demanded from each store's owner the keys to the safe. They placed the owner of Gemini Jewelry, Doekie Sanichar, in a choke hold, and demanded the keys to the safe. When she failed to comply, they restrained her daughter-in-law, Veronica Beehary, the owner of Cindy's Variety, who had tried to aid Sanichar, and brought Beehary into Gemini Jewelry. The prosecution claimed that petitioner grabbed a knife from the store and cut Sanichar's hand and Beehary's thigh for their failure to give up the safe keys. Immediately thereafter, 78-year-old Ann Williamson, who testified at the trial, entered Cindy's Variety. When Sanichar screamed to Williamson to call the police, the petitioner and his two accomplices fled. Sanichar saw petitioner take her keys as he left. Beehary did not see whether the keys were taken. Petitioner was arrested a few blocks away inside a cab.

The key witnesses against the petitioner were Sanichar and Beehary.[1] Petitioner's defense at trial was that this was a case of a business deal gone bad. He contended that he, Sanichar, Beehary, and Beehary's husband (and Sanichar's son) Peter were partners in a fraudulent check cashing scheme and the complaining witnesses conjured up the false robbery charges after an argument over petitioner's share of the scheme's proceeds. Petitioner contended that he went to

---

[1] The prosecution also presented several law enforcement officials and cab driver Harvey Friedman, none of whom were witnesses to the attempted robbery.

the store to discuss the money owed him, an argument ensued, and the complaining witnesses falsely claimed that he robbed them.

Petitioner appealed his conviction on a variety of grounds. Each of his claims was rejected by the Appellate Division, Second Department. See People v. Felix, 868 N.Y.S.2d 288 (2d Dep't 2008). The claims included the two he raises in this petition. First, he alleged that petitioner's due process rights were violated because the prosecution failed to disclose and the court failed to order the disclosure of Brady material indicating that Sanichar and Beehary had been under investigation for credit card fraud by bank investigators months before the attempted robbery. Second, he alleged that his due process rights were violated because the court restricted his cross-examination of complaining witnesses Sanichar and Beehary, prematurely terminated his cross-examination of Sanichar, and prevented him from calling defense witness Alim Azzezz, who would have testified that Sanichar and Beehary falsely accused him of criminal activity.

Regarding the Brady claim, the Appellate Division held that "[t]o the extent that the subject report [of the field interview] constituted Brady material, the defendant, under the circumstances of this case, has failed to demonstrate a 'reasonable possibility' that the failure to disclose the report contributed to the verdict." Felix, 868 N.Y.S.2d at 290 (internal citations omitted). Regarding the second claim, the court held that "the trial court did not improvidently exercise its discretion in limiting the defendant's cross-examination of the store owner regarding the alleged fraud investigation." Felix, 868 N.Y.S.2d at 290 (internal citations omitted). The Appellate Court did not directly address the allegation that petitioner's due process rights were violated when he was prevented from calling Azzezz as a witness.

The New York Court of Appeals denied leave to appeal. See People v. Felix, 908 N.E.2d 931 (N.Y. 2009). Petitioner then filed this petition.

II.  Discussion

A federal court may grant habeas relief to a state prisoner on a claim adjudicated on the merits in state court only when the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Federal law is "clearly established" if it is found in holdings of the Supreme Court at the time of the state court decision. Williams v. Taylor, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." Id. at 405. The court need not identify or be aware of the governing precedent so long as the court's reasoning and result do not contradict it. See Early v. Packer, 537 U.S. 3, 8 (2002). A state court decision is an unreasonable application of clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the particular case." Bell v. Cone, 535 U.S. 685, 694 (2002). This inquiry focuses "on whether the state court's application of clearly established federal law [was] objectively unreasonable." Id.

As discussed in detail below, petitioner has not made the showings required by these standards.

A.  Brady Claim

4

Petitioner first contends that a violation of Brady v. Maryland, 373 U.S. 83 (1963), deprived him of federal due process. Specifically, petitioner argues that the government suppressed and the trial court failed to order the disclosure of police reports documenting field interviews indicating that in the months before the attempted robbery private bank investigators who were investigating credit card fraud watched the Hess gas station operated by Beehary and Sanichar and located next to the jewelry and variety stores. During the trial, petitioner, representing himself pro se with the assistance of a legal advisor, questioned Detective Georgene League of the Long Beach Police Department about her knowledge of a possible investigation of the complaining witnesses' fraudulent activity. Detective League answered the following questions on the record outside the presence of the jury before the court ruled that petitioner could not question Detective League about this alleged private credit card fraud investigation in the presence of the jury. (Trial Tr. at 525.)

| | |
|---|---|
| Question: | Did you tell Ms. Winer [the prosecutor] that the complainants were being investigated? For credit card fraud? |
| Answer: | I had a conversation, I don't remember the date that I had the conversation with her, that I had told her that I had learned several weeks after the robbery, through looking at field interviews and talking to police officers, that two private investigators were actually watching the Hess station, and it had something to do with credit card fraud. |
| Question: | You stated several weeks later after the robbery; am I correct? |
| Answer: | Correct. |
| Question: | You said from reading some P.O. interviews? |
| Answer: | No. That is not where I got the information from. |
| Question: | You just referred to P.O.'s interviews; am I correct? |

| | |
|---|---|
| Answer: | I was looking at old reports. What we do is take field interviews of any suspicious activity that goes on in an area where – well, for this instance a crime had been committed, and I was looking at prior suspicious activity that had gone on in that neighborhood or area. At that time it was learned that somebody, a month prior to the robbery, that there were two investigators, they were not police investigators, they were private investigators from a bank. This is a rumor I hear, I cannot confirm this, that they were actually sitting at that corner watching the Hess station. And I had heard that it was credit card fraud. I was never able to verify any of this information, but this is what I had heard. |
| Question: | Can you produce those field reports that you read? |
| [Prosecutor]: | Objection. |
| The Court: | Sustained. |

(Trial Tr. at 521-22.)

Petitioner argues here that the referenced police reports documenting the field interviews and "the additional information regarding the fraud investigation" constituted Brady material that the prosecutor had a duty to disclose to him. (Petition Addendum at 7-8.) Petitioner states that these police reports were "exculpatory, impeaching, and provided several crucial investigative leads." (Petition Addendum at 8.) Petitioner asserts that the Appellate Division erred by ruling on his Brady claim without reading these police reports, which were not part of the record. (Petition Addendum at 8; Pet'r Reply Mem. at 8.)[2]

---

[2] Petitioner also asserts that the Appellate Division failed to adequately address his Brady claim because it assessed whether a singular report of a single field interview rather than multiple reports of multiple field interviews constituted Brady material that had a "reasonable possibility" of affecting the verdict. (Petition Addendum at 8; Pet'r Reply Mem. at 4-5.) It is of no consequence that the Appellate Division construed the Brady claim as encompassing only one report, since it understood the police report at issue to contain the same material on the same topic allegedly contained in the multiple police reports, documentation of field interviews relaying the unconfirmed "rumor" that private bank investigators investigating credit card fraud watched the Hess station in the month prior to the robbery.

6

In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To prove a Brady violation, a habeas petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued from the withholding. Moore v. Illinois, 408 U.S. 786, 794-95 (1972); see also Stickler v. Greene, 527 U.S. 263, 281-82 (1999). The undisclosed evidence must be material, meaning the petitioner must show that there is a reasonable probability that disclosure of the evidence to the defense would have changed the result of the proceeding. Stickler, 527 U.S. at 281. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985). "In general, impeachment evidence has been found to be material where the witness at issue 'supplied the only evidence linking the defendant[ ] to the crime,' . . . or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." United States v. Payne, 63 F.3d 1200, 1210 (2d Cir. 1995) (internal quotations and citations omitted). Undisclosed impeachment evidence is not material when "although possibly useful to the defense, it is not likely to have changed the verdict." United States v. Avellino, 136 F.3d 249, 257 (2d Cir. 1998) (internal quotations omitted).

Even assuming that the police reports contained the substance disclosed by Detective League, petitioner cannot demonstrate prejudice because he has failed to show that there was a reasonable probability that the outcome of the trial would have been different had the material

7

been disclosed. There is no question that the reports contained information unrelated to the charged crime, and therefore were not exculpatory, and contained no usable impeachment material. First, petitioner would have been unable to impeach Sanichar and Beehary with the investigation into their credit card fraud because it was merely a rumored private investigation and no criminal charges were proven, much less brought against them. See N.Y. Crim. Proc. Law § 60.40; People v. Miller, 91 N.Y.2d 372, 380 (1998) ("Although a witness may be impeached upon cross-examination about certain convictions or specific criminal acts bearing on credibility, we have repeatedly held that the fact of an arrest or an indictment filed incident to an arrest is not a permitted area for impeachment.") (internal quotation marks omitted); People v. Cook, 37 N.Y.2d 591, 596 (1975) ("Impeachment of a witness by evidence or inquiry as to prior arrests or charges is clearly improper. The mere fact that a person has been previously charged or accused has no probative value. There is absolutely no logical connection between a prior unproven charge and that witness' credibility."); People v. Daniels, 639 N.Y.S.2d 96, 96 (2d Dep't 1996) ("[T]he trial court providently exercised its discretion by allowing the defendant to cross-examine the complainant about the facts underlying her arrest but refusing to permit inquiry as to the arrest itself, which did not result in a conviction[.]").

Second, construing the petition in the light most favorable to petitioner, petitioner may have sought the police reports to prove that Sanichar and Beehary had a motive to fabricate their testimony. However, as described in more detail below, under New York law, proof aimed at establishing a motive to fabricate, though never collateral, may be properly excluded where there is no good-faith basis and the proof "is too remote and speculative" to establish a motive to fabricate. See People v. Mestres, 838 N.Y.S.2d 164, 164 (2d Dep't 2007); People v. Ocampo,

813 N.Y.S.2d 217, 218 (2d Dep't 2006). Because the police reports contained speculative, rumored hearsay of an investigation it would have been proper for the trial court, for lack of good cause, to prevent their use during cross-examination or their introduction as evidence.

Finally, there is no reasonable probability that the trial outcome would have been different had these police reports been disclosed because there was overwhelming evidence against the petitioner. Petitioner himself admitted in a signed statement that he traveled to the complaining witnesses' stores with two accomplices, picked up a knife in the store, and demanded that the complaining witnesses give up their keys. (Trial Tr. at 503-05.) The contents of petitioner's statement was disclosed to the jury through the testimony of police officers who took the statement. Accordingly, the Appellate Division's disposal of this claim was neither contrary to, nor an unreasonable application of Supreme Court precedent as set forth in Brady v. Maryland.

B.    Claim of Deprivation of Fair Opportunity to Defend Against State's Accusations

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." Chambers v. Mississippi, 410 U.S. 284, 294 (1973). Petitioner claims that the trial court violated due process and his Sixth Amendment Confrontation Clause rights by restricting and prematurely terminating his cross-examinations of complaining witnesses and preventing him from calling a defense witness, see Davis v. Alaska, 415 U.S. 308, 315-16 (1974); Chambers, 410 U.S. at 294 (1973). Although petitioner raises both claims together as ground two of his petition, the court will address each claim independently.

1. <u>Cross-Examination Claim</u>

Petitioner claims that his due process rights and right to confront the witnesses against him were violated when the court restricted his cross-examination of complaining witnesses Sanichar and Beehary and prematurely terminated his cross-examination of Sanichar. The court has closely reviewed the trial court transcript.

During the trial, petitioner fully cross-examined Sanichar about her alleged fraudulent business practices. She testified that she had never engaged in credit card fraud, that she had never charged the credit card of somebody who had not come into her store, that she had never been reported for charging the credit card of somebody who had not come into her store, that she had never seen petitioner before the date of the attempted robbery, and that petitioner had never brought her credit cards belonging to others. (Trial Tr. at 114, 124-26.) Petitioner was prevented from asking Sanichar whether she had any knowledge of being investigated for credit card fraud, but petitioner did not object to the court's ruling. (Trial Tr. at 125.) After a lengthy cross-examination, petitioner inquired about whether Sanichar knew a man named Ali Azeezz. (Trial Tr. at 131.) Sanichar answered that she did not. (Trial Tr. at 131.) Despite this answer, Sanichar persisted on asking questions about Azzezz. (Trial Tr. at 131-32.) The court then terminated the cross-examination of Sanichar, informing petitioner that "I'm going to end this examination at this point. Have a seat." (Trial Tr. at 132.) When petitioner stated that he "want[ed] the record to reflect that [the court] stopped me from continuing the interview or cross-examination [of] Ms. Deokie Sanichar, due to the fact that there was a 78 year old lady in the hallway there and she was pressed for time," the judge explained that he "discontinued [petitioner's] cross-examination

of that witness because [petitioner] continued to ask irrelevant questions after [he] directed [petitioner] not to." (Trial Tr. at 320.)

Petitioner also cross-examined Beehary about her alleged fraudulent business practices. She testified that she was not involved in credit card fraud, she does not have a credit card processing machine that registers credit card numbers, neither she nor her husband Peter were given checks by the petitioner, and she did not owe the defendant money. (Trial Tr. at 218-23.) Petitioner never asked Beehary whether she knew of a private investigation into her credit card fraud.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to cross-examine witnesses. Davis, 415 U.S. at 315-16. It requires that the defense have the opportunity to inquire about a witness's credibility and reliability. Id. at 315-17. The right to cross-examine, however, is not unlimited. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). The Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (emphasis in the original). Trial judges retain wide latitude to impose reasonable limits on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679; see also United States v. Flaharty, 295 F.3d 182, 190-91 (2d Cir. 2002). The Confrontation Clause is unlikely to be violated when judges apply traditional rules of evidence that, for example, limit inquiry into collateral matters or prevent the introduction, in the guise of cross-examination, of hearsay or opinion evidence not otherwise admissible. Jeffries v. Nix, 912

F.2d 982, 987 (8th Cir. 1990) (citing United States v. Nixon, 418 U.S. 683, 711 (1974). If a reviewing court determines that the denial of a defendant's opportunity to impeach a witness for bias or credibility was constitutionally improper, the denial is subject to a harmless-error analysis. Van Arsdall, 475 U.S. at 684.

The effectiveness of petitioner's cross-examinations was not diminished by the trial court's rulings. Petitioner was permitted to ask Sanichar and Beehary questions about whether they had engaged in credit card fraud. Petitioner's claim that the trial court erroneously prevented him from impeaching Sanichar and Beehary with evidence of prior bad acts by precluding him from cross-examining the two witnesses about their knowledge of a rumored private bank investigation was properly denied by the Appellate Division. The fact of a private investigation into Sanichar's and Beehary's alleged credit card fraud is not a proper subject for impeachment. See N.Y. Crim. Proc. Law § 60.40; People v. Miller, 91 N.Y.2d 372, 380 (1998); People v. Cook, 37 N.Y.2d 591, 596 (1975); People v. Daniels, 639 N.Y.S.2d 96, 96 (2d Dep't 1996). Similarly, the topic was not the proper subject of cross-examination to prove Sanichar's and Beehary's motive to fabricate or bias. See Van Arsdall, 475 U.S. at 678-79. Under New York law, "[p]roof aimed at establishing a motive to fabricate is never collateral and may not be excluded on that ground, but examination of witnesses to establish such a motive must proceed upon some good-faith basis." People v. Ocampo, 813 N.Y.S.2d 217, 218 (2d Dep't 2006); see also People v. Mestres, 838 N.Y.S.2d 164, 164 (2d Dep't 2007) ("While proof aimed at establishing a motive to fabricate is never collateral and may not be excluded upon that ground, a trial court may, in the exercise of its discretion, properly exclude such proof where, as here, the proof is too remote and speculative to establish a motive to fabricate."). Petitioner did not have a

good faith basis for questioning the witnesses about this investigation because the existence of the investigation was rumored hearsay and there was no evidence regarding the specific nature of the alleged investigation.

There was also nothing improper about the court's termination of petitioner's cross-examination of Sanichar, following a lengthy examination, once petitioner's questioning became irrelevant, repetitive, and probed inadmissible collateral areas such as Sanichar's business dealings with Azzezz. The termination prevented a sojourn into inadmissible testimony that might distract the jury from the relevant issues of the case. The trial court's exercise of its discretion to prevent cross-examination into confusing collateral matters and other inadmissible areas "is routinely affirmed even in federal cases, where the scope of review is much broader." See Munoz v. Barkley, No. 02-CV-8075, 2003 WL 21373349, at *2 (S.D.N.Y. June 12, 2003) (citing cases). Accordingly, the Appellate Division's disposal of this claim was neither contrary to, nor an unreasonable application of Supreme Court precedent

2. Refusal to Sign Subpoena For Defense Witness Claim

Petitioner claims that his due process rights were violated when the trial judge refused to sign a subpoena for defense witness Alim Azzezz, who would have testified that Sanichar and Beehary falsely accused him of criminal activity. During petitioner's application for a subpoena to the trial judge, he claimed that Azzezz "is going to testify about some bad acts in regards to the complaining witness Veronica Beehary and Deokie Sanichar about some service that they stole from him." (Trial Tr. at 573.) Petitioner elaborated that Azzezz would testify that "he built something for these people in the back of their house, your Honor, and as a result of building this

13

he was never paid, and as a result of attempting to get paid he was locked up for making threats by the Long Beach Police Department." (Trial Tr. at 574.)

Petitioner's offer of proof demonstrated that Azzezz would testify regarding collateral matters unconnected to the facts of the attempted robbery. Petitioner's proffer suggested that Azzezz's testimony would serve only to impeach the credibility of Sanichar and Beehary on the basis of their purported unsatisfactory behavior in the business dealing or to contradict Sanichar's testimony that she does not know Azzezz. (See Trial Tr. at 131.) It is well-settled under New York and federal law that a witness may not be impeached through extrinsic evidence on matters collateral to the issues in the case. See, e.g., Fed. R. Evid. 608(b); People v. Cade, 73 N.Y.2d 904, 9095 (1989); People v. Olivares, 824 N.Y.S.2d 172, 173 (2d Dep't 2006); People v. Daniels, 639 N.Y.S.2d 96, 96 (2d Dep't 1996). Since Azzezz's testimony would have provided only extrinsic evidence of a collateral matter, the trial court properly denied the application for a subpoena and the Appellate Division's disposal of this claim was neither contrary to, nor an unreasonable application of federal law.

III. Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is denied. Because petitioner has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be in good faith. The Clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

/S/
_____
Allyne R. Ross
United States District Judge

Dated: June 22, 2010
Brooklyn, New York

SERVICE LIST:

*Pro Se Petitioner*
Donald Felix
02-A-5003
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582-0010


*Attorney for Respondent*
Jason Peter Weinstein, Esq.
Nassau County District Attorney's Office
262 Old Country Road
Mineola, NY 11501